Good morning, your honors. Charles Barker IV of the Office of the Attorney. Excuse me. I want to say one thing. You have all heard the argument. I've signed off the same. You can go pray out if you can avoid it. Okay. Thank you. I appreciate that and I did follow along with the presentations on both sides. Yes, sir. I think there's a public policy aspect to these types of cases and it relates to a point that I believe you made in the last case. In the Ivanova case, Kamala Harris submitted a front of the court brief on behalf of the appellate borrower. And one of the main thrusts of her points that she made in that brief, I think it was one of her primary purposes, was because California being the big city that it is with so many people from everywhere, there has been, not just a trend, but almost you could say a practice in California since the mortgage meltdown in 2008-2009 of predatory organizations, sometimes few individuals, using the non-judicial foreclosure statutes and the somewhat suffering nature of those statutes to literally prey on vulnerable borrowers, use the statutes to drive them out of the property, use the statutes to draw up a foreclosure on particular, truly innocent borrowers. And that was part of her purpose. So the Ivanova holding holds that the borrowers in these situations, they do not owe money to the world at large. They do owe it to a specific party. And I represent on behalf of the appellate here, yes, she did borrow money for a mortgage. Yes, she does owe money to somebody. But the legal issue is whether there is a proper party who is entitled to collect. And that does go to the heart of the void versus avoidable line of argument and line of legal analysis. But I will not rehash what was said, but I will amplify a bit the discussion that took place. Well, first, haven't you just asked the case, what are the ways in which you could claim that this was void and not vulnerable, specifically? Specific to this case, there's no merge intermediary. This loan went from originating with Wells Fargo Bank, and HSBC Bank was brought in as trustee for Wells Fargo Asset Security Corporation. That's the securitized trust that is at issue in this case. And one of the final legal issues there is that it was only the note that was transferred, and appellees can see that in their briefing. And when they use the argument. But even Elvis says that the deed of trust should not go together. I'm sorry, did you repeat? Right, even Elvis says that the deed of trust should not go together when you transfer the loan interest to the deed of trust. Well, hypothetically, but the standard in practice is still to have the deed of trust transferred literally at the same time in a formal way. And part of the reasoning to the language that you just mentioned and introduced in the other brief, when you say that the deed of trust follows the note, part of what has been historically in California is the deed of trust can be transferred with the note at the same time. So the problem is that it didn't separately assign the deed of trust as the problem. Right, that's one of the problems. This is a painful problem. This is that problem of the time when we were talking about the last case where there's a question about who did the transferring. Yeah, who transferred it. Right, the question of who did the transfer. And in the last case also went to the issue of whether there was any assignment or a late assignment, because Glaske is based on a late assignment. A lot of these cases are based on late assignments. A lot of late assignment cases have come out the other way since you found them, right? No. This is what's interesting. One of my cases in Assigning First Amendment to America was actually remanded with that oral argument by this court in May of 2016. So this was still at that point only Satterbeck had come out significantly in defense of Apelli's position. And he has to choose the lenders and servicers position generally in this type of law. And his technique was that was a late assignment case among other things, but it had other similarities to this case. And void versus voidable, whether the late assignment, whether the failure of property transfer, whether those types of legal issues would make void the overall transfer, that was at the heart of this case. That is at the heart of the vast majority of these disclosure cases. So in which case, can I just clarify? So you have two arguments. Let me just try to get to heart. What are your arguments are about why this was a void transfer? Okay. And this is what I'm interested in. I'm trained to argue this. Sure. And one of them is because the interest was not properly assigned. Right. And the other is it was late. Well, I think there's an issue. The transfer into the securitized trust was late. There's an issue as to the time. I mean, Apelli has a position that we conceded that it was the wrong time. I don't believe we conceded. I thought it was the two reasons. There's one more. Okay. And this is another issue that's been litigated. But like the other issues, I don't think that the law is entirely settled on this question either, and that's where there was an endorsement in blank, rather than a specifically identified, specified endorsement at the time, that the underlying loan, a concession with Wells Fargo Bank, went into the securitized trust, called VAHSBC Bank. At that time, there was, down my way, a blank endorsement. I believe Apelli's will say that the law is uniform and that's okay. I think that's an overstatement. But it's not me. It's that it's avoidable rather than void. It's not bothering the parties. Well, I think it's okay. It's law that void makes such an assignment. Void, I also just want to just briefly refer to Sierrata. By the way, I don't know if I mentioned this, but I would like to reserve two minutes for rebuttal. Sierrata, the way that that plays into this case, this is outside of students, is actually important. So I wanted the court to hear this. One of the issues in this particular appeal is that in the Apelli briefing itself, we did not literally brief every cause of action. But in Sierrata, where they did remand the entire case, Sierrata found that where there was pleading related to title, and they treated all of the foreclosure briefing in that case as pleading to title, then the quiet title, that was one of the causes of action there, and the cancellation of that stress, that was one of the causes of action there. They were also remanded because of the argument about all the foreclosures. And we have, in this case, all the foreclosure, cancellation of instruments, quiet title. To the extent that this case lines up with Sierrata, I believe remand would be appropriate even for those causes of action. What are we remanding for or about? I'm sorry? Why would we be remanding? For what are we remanding? Remanding to determine what? The specific causes of action, I would intend that this were remand, would be wrong foreclosure, quiet title, slander of title, cancellation of instruments. Why would we do that? Well, if the court sees that this case is sufficiently in line with Sierrata, which I believe it is, then the fact that we did not plead in our appellate brief and argue, as to every cause of action, should not be a basis for only remanding on, let's say, raw foreclosure. That was my only point as far as that goes. There's another thread of law that I think is really important to incorporate into these cases as well, and that is there are 11 judicial circuits in the federal system, and there are city courts all over the country. There are particular circuits, the first and seventh come to mind, Massachusetts and Illinois specifically, in which Lasky is still found to be good law, and there are rulings.  Right. I'm aware of that. So what I'm asking this court to consider is that, yes, there's been a trend since Kasaki and Sierrata, which were both decided in May of 2016. There's also the Lundy case, which you had mentioned earlier. And. But Lundy wasn't, though. It was like, I think, Sierrata, and it was those are cases in which there were inherently dual assignments. Yes. You don't have that. Right. I think there are enough analogies, though, that. What's the analogy? Well, the analogy is you have a securitized trust engaged in certain behavior, and you have assignments related to that trust. And. But your complaints are technical complaints about how the assignments were received, not who did it or who owns it. I mean, you don't have any doubt about the fact that there was someone else floating around or there was a gap in the title or anything else, or simply saying they didn't do it right. Right. And therefore, it's devoid that it's consistent with Glaske. Glaske is still a good law in certain circumstances. I'm not thankful that it's becoming less good law in California, but I don't think. We're applying California law in this case. Is that not right? Oh, of course. But I think it's still open to question whether Glaske should be discarded entirely. And one of the things I would do request is that, consistent with the ninth appellate court rules, given time to post-hearing, submit a letter of supplemental authorities, and we did submit both sides in this case, a letter of supplemental authorities, except Ellie's letter was just submitted at the end of last week. I submitted it earlier this week. What I'd like to have additional time to brief on is First and Seventh and possibly other district or state law that bears on the issues directly related to this case, and to the extent that they contradict the trend in California law, I think this Court should consider that. Because I don't think we can. Ultimately, what we need to decide is whether the California Supreme Court would not follow what the California Court of Appeals received. Thank you. Well, with all due respect, there was a demigration question before the Ninth Circuit very recently, and that panel did take into account quite a bit of law that was outside of the Ninth Circuit. I'm sorry? We want you to reserve time. Yes. Thank you very much. Yes. Mr. Collins, I don't even have time to ask this basic question. It's very broad. Very simple. Part of the proposition you're making is that the Ninth Circuit has to review the law before the Ninth Circuit. Do you agree with that? Yes. That's fine. Just let me finish that. When that happens, what happens is that your folks can leave, borrow, and sell the property free and clear of the deed of trust. I don't believe the borrower can sell the property free and clear of the deed of trust. You can't steal the money. The property is sold. Where is the money? The property is sold. It's fine enough. I believe what I'm trying to say is, are we in a position then to continue to be a fair, well, I suppose, to continue to be fair to the deed of trust, because somehow that obligation disappeared or is it? I agree. That's an open question, and I think it's one of the reasons why transactions like this can be treated as void, is because they make uncertain the disposition of the property, the disposition of the mortgage, and any potential future transaction. The position of the property is uncertain, and if he sells it, how many is he ever going to be able to collect, his money, and or for funds in the house? I can't surmise whether that would be a good result, but I don't think that a balance should bear the societal burden for the mess that was created by the messengers using loans. You know, they created the mortgage meltdown among other things, but if it's void, then there's no magic clearance of the part or the entire debt, and in a good sense, there is no harm to your client if he finds he has to pay the loan that he or she made, because I'm just curious to know, you know, that it's just going to make sense if we don't have this, what would you do first? Is the goal as long as it doesn't work for me? Is that what you're saying? It's an open question. Okay. Well, I would agree with you that in this case, it's not the most sympathetic case of this type of case. On the other hand, where you do have late assignments, and where you do have, you know, assignments that happen years later, that's a problem. One of the problems with this case also is that the assignment wasn't recorded until 2013, when the sales trustee was substituted into the case. It was substituted into the case only for the purpose of selling the property. So, six years pass by, the public contends to all purchases of the property, the borrower herself, and her ability to alienate her property. I mean, none of these issues are extant for six years, and then all of a sudden. What, if I have been a problem, I should try to sell the property, which I did. Right. But, I mean, it brings to bear how official all these reasons are. Okay. We will call your time, and we will introduce the time as it is for discussion. Thank you very much.  Thank you, Your Honors. Good morning, Your Honors, and may it please the Court, Eric, for appellees, Wells Fargo Bank, and HSBC Bank USA. I'd like to address, each of the allegations of Boindis, that were raised by the Appellant's Counsel. First, the fact that there is no simultaneous execution of an assignment of deed of trust, when the note was sold to the trust in 2007, is completely irrelevant under California law, because when you assign the note, the deed of trust necessarily follows it. This is not only mentioned in the Ivanova decision, but it's not understood. And I'm trying to understand, this whole system is that, this isn't a MERS case, they understand that, right? That's correct. But, if it were, you wouldn't accept, I mean, the whole MERS system depends, does it not, on separating the underserved, the vulnerable, from the legal ownership of the deed of trust. In the MERS system, they act as a nominee, and they will assign, as part of their institutional rules, deeds of trust to a beneficiary, who actually owns the loan, before foreclosure. That's done, as part of the MERS system, but this isn't a MERS case. Ironically, I think the next thing we need is for people to go into it then, because it seems to me that there are some students in Japan, not separating out law from the deed of trust. Even though California law seems to say that these two together, and so the Ivanova opinion, which was very avid about this, didn't seem to take account of what was going on in the MERS system. And I think that your honor is right, that Ivanova didn't expressly address the situation with the MERS assignment, but in a case like this, where MERS isn't involved, that the deed of trust necessarily falls a note, and that's not only Ivanova, it's actually codified under California law, under Civil Code section 2936. So, the fact that there's no kind of temporaneous assignment of the deed of trust simply doesn't matter. Assuming, moving to the second point, assuming that there was some sort of void in the assignment of the loan to the trust, it would only render the assignment voidable, not void, and that is the overwhelming trend since Ivanova has come out. I mean, that's a kind of flooding question. I wonder, and I think I know the answer to this, but whether Ivanova, you know, was, in fact, was just left with any sense of what actually would be void. I mean, I gathered in one set of cases that have held something void, or there's still assignment cases. But other than that, anything that goes on within a single line of title just seems to have been declared voidable. The real question is with the California Supreme Court, which appears to think it did something in Ivanova, go along with that. No, I don't think the California Supreme Court reached that issue. In fact, We know it didn't reach the issue, but ultimately, the question is what would California decide. Now, once I read this, it's actually whatever they would decide would be under New York law, theoretically. I'm sorry? What they would decide would be under New York law, not California law, right? To the extent that the full human servicing agreement is governed by New York law, and he's in here? It's alleged that it is, yes. Okay. So, it's not, I mean, if, for example, we could certify to the California Supreme Court that that would be odd because this California law that we're talking about is New York law. That's correct, Your Honor, and that's good to the point. The overwhelming majority of New York cases, including the Second Circuit in the Rajman case, have held that assignments in this circumstance that are allegedly made after the closing date. Employee servicing agreements are only voidable, not void. So, I mean, it's a closing date problem. All, I mean, all these cases, credit, these tax problems, is that where the closing date time comes from? That's typically the theory, Your Honor, because there are tax code provisions to oversimplify that, which basically say that mortgages should be received within a certain amount of time after the trust opens in order to achieve the tax benefits of being a remit. But, but therefore, is that incorporated into the terms of the trust? So, it's also a question of enforcing the terms of the employee agreement. Yes, I would, I would agree with that. So, again, to the extent that this is an issue of New York law, the overwhelming majority of courts have felt that this is only voidable, not void. The one New York decision that looked the opposite way is what Golaski relied on, that was the Arrow-Bobo decision. That decision has actually subsequently been reversed by an appellate court in New York. So, there's really, I think, very little, if any, authority that would support this, I guess, argument in this case opposed to the NOVA. And the third point, that Colin's counsel raised, concerned the, the endorsement of the NOVA. There's nothing in the UCC that requires that, it was specifically endorsed to address what it is, a sign. And even if there were, there's no authority in the UCC or, or anywhere that would hold that sort of defect, when there's the assignment void, as opposed to voidable. Are you also arguing that there is no prospective wrongful foreclosure of a claim of this kind? That there's no wrongful foreclosure? Prospective of this wrongful foreclosure? Yes, because we are arguing that as well. But we don't need to decide that. We don't need to reach it. If the NOVA didn't reach it, Satterbach held, Golaski, the NOVA, that there is no wrongful foreclosure claim. But this is too far, I mean, how do we impeach it? Impeach it? To the opinion that that's true, but the, the California appellate decisions have overwhelmingly held that that claim doesn't arise pre-foreclosure, and that includes Combs and the Kahn case. That's, that's 12. It's, on that issue, since the court is deciding in California law, it should follow the decision, the decision of any intermediate appellate court. Plus there's convincing evidence that the California Supreme Court would decide the issue differently, and I don't think that any has been represented here. Counsel Judge Golas, if I could just interject, doesn't the Combs case speak that the wrongful foreclosure claim here fails because it was pre-foreclosure? Yes, Judge, we would agree with that. We think that there is no cause of action under California law for wrongful foreclosure, pre-foreclosure, and that's in Combs, and also reaffirmed by Satterbach, closely with Elba. Thank you. Unless there are any questions, I'm ready to submit. Thank you. Thank you, Your Honors. Sir, do you have any issues? Sure. Your colleague is going to use very little time. As you say, Your Honor, I would like to clarify that, with this particular Superintendent's trust issue in this case, I did say I think New York trust law is controlling both appellate, both appellate briefs, to make that point clearer. As to the issue of whether it's a prospective wrongful foreclosure case, I mean, even though we'll have that door open, there are many cases, such as this one where a notice of default, a notice of trustee setup, were both filed, and I think that distinguishes it from a preemptive case, where there's not even a foreclosure of any kind pending. The other issue on Lundy and Gasecki, I mean, I settled Gasecki when that case went back on remand, and Lundy is still pending and heading to trial, so it's still an open question whether a post-NOD wrongful foreclosure case is an appropriate case with the auction desk taking place. Is there any California appellate case in Lamington? Gasecki. That was the day of 2016, and I would be the first to say the trend since then is the other way. California appellate case, Gasecki? No, it's a NYSERDA case. Is there a California state court appellate case? Theoronic. Yes. Theoronic prospective? Well, that's a complicated scenario there, because the case was filed when it was still pre-auction, but then an auction took place, and the holding in that case does not clearly enunciate whether it would apply in a pre-auction context or just the post-auction context that actually happened after the case was filed. So the short answer is there's not an authorized appellate opinion at this time. I think that needs to change. Thank you. Thank you very much. Thank you both for your argument. The case of Benares v. One Starbo Bank is submitted, and we'll go to the last case of the day, Orion v. National Starbo Bank.
judges: Gould, Berzon, Garbis